IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEITH BARRY WASHINGTON,

    Plaintiff,

v.

SUPERINTENDENT MICHAEL
WENEROWICZ, et al.,

    Defendants.

CIVIL ACTION
NO. 14-06916

**OPINION**

**Slomsky, J.**                                                                                                           October 3, 2017

## I.    INTRODUCTION

Plaintiff Keith Barry Washington, a prisoner at State Correctional Institution at Graterford ("SCI Graterford," "Graterford," or the "Prison"), brings this action pro se against Defendants Michael Wenerowicz, Thomas Dohman, Todd Faubert, Frank Regan, Patricia Connor-Council, Johnny Morgan, Earl Thomas and Dorina Varner, alleging civil rights discrimination in violation of his First, Fifth, Eighth and Fourteenth Amendment rights.[1] (Doc.

---

[1] Michael Wenerowicz served as Superintendent of State Correctional Institution at Graterford from May 2010 to May 2015, and thereafter as Eastern Regional Deputy Secretary of Corrections. (Doc. No. 51-11 ¶¶ 2–3.) Thomas Dohman served as Major of the Guard at Graterford from 2011 to August 2015. (Doc. No. 51-6 ¶ 2.) Todd Faubert is a Corrections Counselor at Graterford, a position he has held since September 2012. (Doc. No. 51-8 ¶ 2.) Frank Regan served as a Unit Manager at Graterford from December 2005 to July 2016. (Doc. No. 51-7 ¶ 2.) Patricia Connor-Council served as Corrections Counselor at Graterford from May 2010 to August 2015, and thereafter as a Unit Manager at State Correctional Institution at Chester. (Doc. No. 51-9 ¶¶ 2–3.) Johnny Morgan served as a Corrections Officer at Graterford from 1993 to May 2017, and thereafter as a Lieutenant at Graterford. (Doc. No. 51-10 ¶¶ 2–3.) Earl Thomas was a Corrections Officer at Graterford all times

1

No. 4 at 12.) On June 26, 2017, Defendants filed a Motion for Summary Judgment. (Doc. No. 51.) Presently before the Court is Defendants' Motion. (Id.) In regard to the First, Fifth, Eighth and Fourteenth Amendment claims, Defendants argue that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. Defendants also argue that Plaintiff failed to exhaust his administrative remedies and for this additional reason, Summary Judgment should be granted in their favor on all claims. Plaintiff disputes these arguments, and the Motion (Doc. No. 51) is now ripe for a decision.

## II. BACKGROUND

On March 14, 2011, Plaintiff began serving his term of incarceration at SCI Graterford. (Doc. No. 51-4 at 6:20–23.) Plaintiff worked in the corrections staff dining room from 6:00 a.m. until 11:30 p.m. (Id. at 7:2–16.) In 2013, he began working the night shift from 10:00 p.m. until 2:00 a.m. in the same dining room. (Id. at 7:18 to 8:4.)

On November 26, 2013, while Plaintiff was working the night shift, he took turkey wings from the kitchen without permission. (Id. at 12:4–13.) He received an informal misconduct and a sanction of having to work five extra days without pay. (Id. at 10:13–25; 12:14–20.) He was allowed to do the work assignment in the kitchen. (Id.) On December 14, 2013, Plaintiff was removed from his work assignment in order to participate in a drug and alcohol program. (Id. at 8:10–13; 10:7–9.)

In April 2014, Plaintiff returned to his work assignment in the kitchen, again working the night shift from 10:00 p.m. until 2:00 a.m. (Id. at 9–12.) On May 12, 2014, Plaintiff was

---

relevant to the Complaint. (Doc. No. 51-2 ¶ 18.) Dorina Varner was Chief Grievance Officer at Graterford at all times relevant to the Complaint. (Id. ¶ 23.)

working his shift in the kitchen when Captain Tom Campbell asked Plaintiff to make him a roast beef sandwich. (Id. at 13:2 to 14:20.) Plaintiff refused to comply with the request because doing so would have required him to go into the freezer without authorization and against his supervisor's order. (Id. at 14:19 to 15:5.) In response, Captain Campbell told Plaintiff he would be removed from his job in the kitchen. (Id. at 15:4–10; 18:25 to 19:8) The next day on May 13, 2014, Plaintiff drafted Grievance #509916, stating that Captain Campbell was incorrectly removing him from his job. (Id. at 17:11–14.) On May 16, 2014, Wendy Shaylor, the Prison Grievance Coordinator, received the grievance. (Id. at 17:13–19.)

On May 16, 2014, a five-member unit team conducted a staff meeting, otherwise known as a "staffing," to decide whether Plaintiff should be removed from his job in the kitchen.[2] (Id. at 19:17–25, 21:9–16.) Plaintiff attended the staffing and gave the unit team his version of events. (Id. at 21:9–16.) At the meeting, three staff members, Regan, Faubert and Connor-Council, voted to remove Plaintiff from his job. (Doc. Nos. 51-7 at 1, 51-8 at 1, 51-9 at 1.) Plaintiff acknowledged in his deposition that he did not "think [Regan, Faubert and Connor-Council] knew" during the staffing that Plaintiff had filed a grievance. (Doc. No. 51-4 at 57:21–22.)

Two hours after the meeting, Plaintiff's cell was searched by two Corrections Officers: Defendants Morgan and Thomas. (Id. at 27:14–21.) Plaintiff then filed two more grievances: Grievance #510245 concerning the result of the staffing and Grievance #510249 concerning the search of his cell. (Id. at 66:24 to 67:5.) Defendant Thomas Dohman, Major of the Guard at

---

[2] The five-member unit team consisted of Defendants Regan, Faubert and Connor-Council, and also non-Defendants Ronnessa Edwards and Meea Cunningham.

3

Graterford, combined Plaintiff's three grievances into a single one.[3] (Doc. No. 51-6 at 2–3.) On June 9, 2014, Dohman denied the grievance. (Id. at 3.) On June 17, 2014, Plaintiff appealed Dohman's decision to then-Superintendent Wenerowicz, another named Defendant.[4] (Doc. No. 51-11 at 2.) On August 25, 2014, Wenerowicz upheld Dohman's denial of the grievance. (Id.) Plaintiff next attempted to make a final appeal to the Secretary's Office of Inmate Grievances and Appeals, but the appeal was denied by Officer Dorina Varner, who is another Defendant, because it exceeded the two-page limit under DC-ADM 804 guidelines. (Id. at 11.)

---

[3] Dohman states in his Declaration:

> As Major of the Guard, my job duties included participating in staffings along with a staffing team and making a recommendation to the Superintendent as to whether an inmate should be removed from his prison job.
>
> ****
>
> As Major of the Guard, I reviewed grievances at the first level as a Grievance Officer and investigated the grievance.

(Doc. No. 51-6 ¶¶ 3, 6.)

[4] Wenerowicz states in his Declaration that the Department of Corrections has a three-tiered grievance system to resolve prisoners' administrative complaints. (Doc. No. 51-11 ¶ 5.)

> The grievance is assigned to a Grievance Officer for investigation and response within 15 working days. Step two of the grievance process is considered the first level of appeal to the Facility Manager, which is the Superintendent. If the inmate is not satisfied with the findings of the Grievance Officer, he may appeal the findings to the Facility Manager for review. The final step of the grievance process is the inmate's appeal to the Secretary's Office of Inmate Grievances and Appeals. As Superintendent, I reviewed grievances at the Second level of appeal.

(Id. at 5-6)

On January 5, 2015, Plaintiff filed an Amended Complaint alleging civil rights violations against Wenerowicz, Dohman, Faubert, Regan, Connor-Council, Morgan, Thomas and Varner.[5] (Doc. No. 4.) In the Amended Complaint, Plaintiff alleges a First Amendment retaliation claim against Defendants Dohman, Morgan and Thomas for the single cell search. (Id. ¶¶ 29–41.) Plaintiff brings a second retaliation claim against Wenerowicz, Dohman, Faubert, Regan and Connor-Council for removing him from his kitchen job. (Id.) Plaintiff also alleges Fifth, Eighth and Fourteenth Amendment claims against all Defendants arising from these two events. (Doc. No. 4 ¶¶ 27–41.)

On June 26, 2017, Defendants filed a Motion for Summary Judgment. (Doc. No. 51.) On July 28, 2017, Plaintiff filed his Response in Opposition to the Motion. (Doc. No. 53.) On August 3, 2017, Defendants filed a Reply. (Doc. No. 55.) Because Plaintiff has failed to exhaust his administrative remedies and certain claims fail for other legal reasons, the Court will grant Summary Judgment in favor of Defendants and against Plaintiff.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

---

[5] Captain Campbell was also a named Defendant in this case. On May 25, 2017, Defendants filed a Suggestion of Death on his behalf (Doc. No. 48) and he will be terminated as a Defendant.

For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013).

The movant bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party must support its assertion that a fact cannot be genuinely disputed by citing relevant portions of the record, or showing either that the materials cited do not establish a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson, 477 U.S. at 252.

"In considering a motion for summary judgment, a court does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the party opposing the motion." Siegel Transfer v. Carrier Express, 54 F.3d 1125, 1127 (3d Cir. 1995). The non-moving party, however, may not "rest upon mere allegations, general denials or . . . vague statements." Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the non-moving party's evidence "is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting Anderson, 477 U.S. at 249).

## IV. ANALYSIS

Plaintiff's claims under the Fifth, Eighth and Fourteenth Amendments do not present genuine disputes of material fact and will be dismissed. Additionally, Plaintiff's First Amendment retaliation claim against Defendants Dohman, Morgan and Thomas does not present a genuine dispute of material fact and will be dismissed. These claims will be discussed first.

Plaintiff's First Amendment retaliation claim against Defendants Wenerowicz, Dohman, Faubert, Regan and Connor-Council would survive Summary Judgment. However, it will be dismissed because Plaintiff has failed to exhaust his administrative remedies. Failure to exhaust administrative remedies is another reason Plaintiff's claims under the Fifth, Eighth and Fourteenth Amendments, and his other First Amendment retaliation claim, should be dismissed.

### A. Plaintiff's Fifth Amendment Claim

Plaintiff alleges in his Amended Complaint that the Due Process Clause of the Fifth Amendment was violated here. (Doc. No. 4 ¶ 27) This claim must fail as to Defendants because the Fifth Amendment applies only to actions of the federal government and its employees and does not apply to state employees. Bergdoll v. City of York, 515 F. App'x 165, 170 (3d Cir. 2013); Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009) ("[T]he due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials."). Because Defendants are state, not federal, employees, they are entitled to judgment as a matter of law on the Fifth Amendment claim.

### B. Plaintiff's Eighth Amendment Conditions of Confinement Claim

Plaintiff alleges that Defendants Dohman, Morgan and Thomas violated his Eighth Amendment rights by searching his cell. (Doc. No. 4 ¶ 27.) The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. Although the Eighth Amendment

does not require "comfortable" prison conditions, the conditions of confinement must not "involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

To establish an Eighth Amendment conditions of confinement claim, Paintiff must show "(1) [that] the deprivation was objectively, 'sufficiently serious' such that the prison officials' acts or omissions resulted in the denial of 'the minimal civilized measure of life's necessities'; and (2) that the prison officials exhibited a 'deliberate indifference' to his health and safety." Barndt v. Wenerowicz, __ F. App'x __, No. 16-4402, 2017 WL 2628877, at *2 (3d Cir. June 19, 2017) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Restrictive, harsh conditions do not violate the Eighth Amendment but rather "are part of the penalty that criminal offenders pay for their offenses to society." Id. (quoting Rhodes, 452 U.S. at 347).

The Eighth Amendment protects prisoners from searches conducted only for "calculated harassment." Hudson v. Palmer, 468 U.S. 517, 530 (1984). A single cell search is generally insufficient to constitute an Eighth Amendment violation. Vigliotto v. Terry, 873 F.2d 1201, 1203 (9th Cir. 1989); see Tate v. Campbell, 85 F. App'x 413, 417 (6th Cir. 2003) (stating that "the single search of a prisoner's cubicle does not rise to the level of an Eighth Amendment violation"); Chevere v. Johnson, 38 F.3d 1220, 1994 WL 577554, at *2 (10th Cir. Oct. 17, 1994) (unpublished table decision) (holding that a single cell search, during which a defendant guard allegedly stepped on a Puerto Rican flag and allowed a crucifix to fall to the floor, did not violate the Eighth Amendment); Kokinda v. Pa. Dep't of Corr., No. 16-0005, 2016 WL 7029385 (W.D. Pa. Oct. 31, 2016) (holding that "one allegedly retaliatory cell search in which Plaintiff's legal documents were scattered throughout his cell, but none of his property was actually lost or destroyed" did not violate the Eighth Amendment). Courts have found that even sporadic

8

searches of an inmate's cell do not violate the Eighth Amendment. See Banks v. Beard, No. 3-659, 2006 WL 2192015, at *11 (W.D. Pa. Aug. 1, 2006) (holding that "less than a handful of searches over the period of several months" did not violate the Eighth Amendment); McKeithan v. Jones, No. 3-1318, 2005 WL 1324878, at *2 (M.D. Pa. June 3, 2005) (holding that "one search about every eleven days" did not violate the Eighth Amendment).

In this case, Plaintiff refers to only one cell search conducted by Defendants Morgan and Thomas on May 16, 2014 as the basis for his Eighth Amendment claim. Because a single cell search does not rise to a violation of the Eighth Amendment, Defendants are entitled to Summary Judgment as to Plaintiff's Eighth Amendment claim.

### C. Plaintiff's Fourteenth Amendment Procedural Due Process Claim

Plaintiff alleges that he was deprived of due process under the Fourteenth Amendment because he was removed from his job in the kitchen and not given a hearing during the grievance procedure.

#### 1. Procedural Due Process Standard

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that "(1) he was deprived of an individual liberty interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). A state's deprivation of liberty or property does not violate the Due Process Clause where the State provides adequate post-deprivation remedies. Paratt v. Taylor, 451 U.S. 527,

9

540–41 (1981), overruled on other grounds by Daniels v. Williams, 451 U.S. 527 (1986). A due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Zinermon v. Burch, 494 U.S. 113, 126 (1990). Only if there were no post-deprivation remedy can Plaintiff prevail on a procedural due process claim. Hudson v. Palmer, 468 U.S. 517, 533 (1984).

The Third Circuit has held that "there is no liberty interest in a prison job arising from the Due Process Clause." Presbury v. Wenerowicz, 472 F. App'x 100, 101 (3d Cir. 2012). And an inmate "does not have a protected property interest in his prison job which would support a due process claim." Id. The Third Circuit has further held that the Pennsylvania Department of Corrections grievance process provides adequate post-deprivation remedies. Mattis v. Dohman, 260 F. App'x 458, 461 (3d Cir. 2008) ("In Pennsylvania, the state prison system has established an internal grievance procedure through which the state hears claims and, when appropriate, provides remedies; [inmate] was provided with a meaningful post-deprivation remedy regarding the loss of his property in the form of this grievance system."). Because Plaintiff had no protected interest in his prison job, and because the Department of Corrections grievance process provides adequate post-deprivation remedies, Defendants are entitled to judgment on the Fourteenth Amendment due process claim.

### 2. Plaintiff's Claims Against Defendant Varner

Plaintiff claims Defendant Varner violated his constitutional rights when she dismissed the final appeal of his grievance. This Court has held that "[t]he failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Gordon v. Vaughn, No. 99-1511, 1999 WL 305240, at *2 (E.D. Pa. May 12, 1999). Therefore, a plaintiff cannot maintain a constitutional violation for his grievance being denied. Rivera v.

Chester Cty., No. 15-5609, 2017 WL 1150622, at *26 (E.D. Pa. Mar. 28, 2017). Because Plaintiff only brings suit against Varner for dismissing the final appeal of his grievance, she too is entitled to judgment on the Fourteenth Amendment due process claim.

### D. Plaintiff's First Amendment Retaliation Claims

In the Amended Complaint, Plaintiff asserts two claims for retaliation in violation of his First Amendment rights. (Doc. No. 4) First, Plaintiff alleges that Dohman, Morgan and Thomas retaliated against him by performing a single cell search. Second, Plaintiff alleges that Defendants Wenerowicz, Dohman, Faubert, Regan and Connor-Council retaliated against him by removing Plaintiff from his prison kitchen job.

Section 1983 provides a cause of action against any person who, under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (2012). To prevail, Plaintiff therefore must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Zimmerlink v. Zapotsky, 539 F. App'x 45, 48 (3d Cir. 2013) (quoting Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006)). That an adverse action occurs following protected activity does not suffice to establish a causal link between the two events. Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005). Timing alone can suffice to establish a causal link but the timing of the retaliatory action must be "unusually suggestive" of a retaliatory motive. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); see Jalil v. Avdel Corp., 873 F.3d 701, 708 (3d Cir. 1989) (finding that a plaintiff-employee demonstrated a causal link by the circumstances that discharge followed

11

rapidly, only two days later, upon employer's receipt of plaintiff's EEOC claim). A defendant may not be held liable for retaliation absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity. See Laskaris v. Thornburgh, 733 F.2d 260, 265 (3d Cir. 1984).

If Plaintiff makes out a prima facie case, the burden shifts to Defendants to prove that "they would have made the same decision absent the protected conduct for reasons reasonably related to [a legitimate] penological interest." Carter v. McGrady, 292 F.3d 152, 154 (3d Cir. 2002) (quoting Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001)). If Defendants are able to meet this burden, they are entitled to have the claim dismissed. See Rauser, 241 F.3d at 334. "[C]ourts should afford deference to decisions made by prison officials, who possess the necessary expertise." Id.

In this case, Plaintiff argues that filing Grievance #509916 was protected First Amendment activity and that Defendants retaliated against him by searching his cell and by removing him from his kitchen job.

### 1. Plaintiff's First Amendment Retaliation Claim Against Defendants Dohman, Morgan and Thomas

Plaintiff alleges that his cell was searched once by Defendants Morgan and Thomas at Defendant Dohman's direction. (Doc. No. 51-4 at 32:8 to 33:22.) The Third Circuit has held that a single search of an inmate's cell is not considered sufficient to give rise to a First Amendment retaliation claim because a cell search is a "generally acceptable prison practice." Sims v. Vaughn, 189 F. App'x 139, 141 (3d Cir. 2006); see also Hudson v. Palmer, 468 U.S. 517, 529 (1984) (holding that "[r]andom searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries"). Plaintiff's claim therefore does not

allege adverse action that can give rise to a constitutional claim of retaliation under the First Amendment.

### 2. Plaintiff's First Amendment Retaliation Claim Against Defendants Dohman, Faubert, Connor-Council, Regan and Wenerowicz

Plaintiff alleges that he was removed from his kitchen job as retaliation for filing a grievance. Plaintiff acknowledged at his deposition that he did not "think [Regan, Faubert and Connor-Council] knew" during the staffing that he had filed a grievance. (Doc. No. 51-4 at 57:21–22.) But in his Response, Plaintiff claims that Regan, Faubert and Connor-Council "would have been aware" of the grievance by the time of the staffing because all grievances are posted on the Department of Corrections website for public viewing as soon as they are filed. (Doc. No. 53 at 22.) In their Reply, Defendants invoke the "sham affidavit" doctrine[6] as to Regan, Faubert and Connor-Council. Defendants argue that Plaintiff's position on their awareness that Plaintiff filed a grievance before the staffing at which they voted to terminate him as asserted in his Response (Doc. No. 53) contradicts what he said in his Deposition (Doc. No. 51-4) and therefore should be considered a sham. (Doc. No. 55.) Plaintiff avers in his Response to Defendants' Reply that his contradictory assertion was made in light of information he did not know about at the time he was deposed. (Doc. No. 57 at 1–3.)

The Third Circuit in J.R. v. Lehigh County has stated that "[a] sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." 534 F. App'x at 108 (quoting Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007)).

---

[6] This doctrine states that, in certain instances, an affidavit that is inconsistent with deposition testimony may be deemed a sham and therefore barred. See, e.g., J.R. v. Lehigh Cty., 534 F. App'x 104, 108 (3d Cir. 2013).

13

The court continued: "The timing of the affidavit, whether there is a plausible explanation for the contradictory statements, and whether there is independent evidence in the record supporting the affidavit, may be considered when determining whether an affidavit is a sham." Id.

In this case, there is no independent evidence in the record to support Plaintiff's assertion that all grievances are posted on the Department of Corrections website for public viewing as soon as they are filed. However, Plaintiff offers a plausible explanation for the contradictory statements in his Response: that he did not know this information at the time he was deposed. Because Plaintiff states a plausible explanation for his contradictory statements, this Court will not apply the sham affidavit doctrine.

In addition, Defendants contend that regardless of whether they knew about Plaintiff's grievance at the time they terminated him, Plaintiff fails to establish a causal connection between his filing of a grievance and his removal from the kitchen job. Defendants contend that Plaintiff would have been fired anyway for removing food from the kitchen. (Doc. No. 51 at 8.) The only incident in the record of Plaintiff removing food from the kitchen occurred seven months before the staffing at which he was terminated. He was punished with a sanction but allowed to keep his job. However, just two days after filing a grievance, Plaintiff was terminated. Thus, the time frame in which Plaintiff was terminated after he filed a grievance is unusually suggestive. Therefore, a genuine dispute exists as to whether Plaintiff was terminated for filing a grievance. But because Plaintiff failed to exhaust requisite available administrative remedies, the dispute on the First Amendment retaliation claim against Dohman, Faubert, Connor-Council, Regan and Wenerowicz will be dismissed. Summary Judgment will be granted in favor of these Defendants.

### E. The Court Will Dismiss All Claims Because Plaintiff Failed to Exhaust His Administrative Remedies

Plaintiff brings this action as a pro se prisoner, currently incarcerated at Graterford. Because he failed to exhaust requisite available administrative remedies for the claims he asserts, the Court will grant Summary Judgment in favor of Defendants.

The Prison Litigation Reform Act (PLRA) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012).

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Retaliation claims are included in the term "prison conditions" and require the inmate to exhaust administrative remedies. Id.

The exhaustion of available administrative remedies is mandatory under § 1997e(a). Woodford v. Ngo, 548 U.S. 81, 86 (2006). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief sought. Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "Exhaustion is mandatory and must be 'proper,' which requires a prisoner to 'us[e] all steps that the agency holds out, and [to do] so *properly* (so that the agency addresses the issues on the merits).'" Mack v. Klopotoski, 540 F. App'x 108, 111–12 (3d Cir. 2013) (alterations in original) (quoting Woodford, 548 U.S. at 90)). Proper exhaustion of administrative remedies "demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. Therefore, a prisoner whose grievance or appeal is dismissed because of procedural defects has not exhausted his

15

available administrative remedies for purposes of the PLRA. See id.; Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004) (holding that the administrative exhaustion requirement of the PLRA includes a procedural default component that is applicable to the state prison grievance system). When prison officials prevent a prisoner from using a remedy, it is not an "available" remedy under § 1997e(a). Mack, 540 F. App'x at 112.

The Pennsylvania Department of Corrections has implemented an Official Inmate Grievance System. The grievance system is governed by the Administrative Directive 804 (DC-ADM 804), which sets forth a three-tier administrative remedy system. Williamson v. Wexford Health Sources, Inc., 131 F. App'x 888, 890 (3d Cir. 2005). Pursuant to DC-ADM 804, an inmate is required to present his grievance to the facility Grievance Coordinator for initial review within 15 days after the events upon which the grievance is based. Id.; (see also Doc. No. 51-11 ¶ 5). The inmate is required to appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager. Williamson, 131 F. App'x at 890; (Doc. No. 51-11 ¶ 5). From there, the inmate must appeal to the Secretary's Office of Inmate Grievances and Appeals. Williamson, 131 F. App'x at 890; (Doc. No. 51-11 ¶ 5).

In this case, Defendants submit that Plaintiff has failed to exhaust administrative remedies because his final appeal was dismissed not on the merits, but rather on a procedural defect. (Doc. No. 51 at 17.) Specifically, Defendant Varner denied Plaintiff's grievance at the final level of appeal because it exceeded the two-page limit. (Id.; Doc. No. 4 at 6.) Plaintiff contends that when Varner denied his appeal, she "fail[ed] to address each isolated incident" in the grievance. (Doc. No. 4 at 6.) Plaintiff states that only when the three separate complaints were combined did they exceed the two page limit and that he was not responsible for their joinder in one appeal. (Id.) He further asserts that the exhaustion doctrine only requires a

claimant to submit a claim to the highest level of appeal, and does not require that the highest level of appeal decide the claim on the merits. (Doc. No. 53 at 23.) Plaintiff offers no support for the latter contention, and it is belied by binding precedent. E.g., Mack v. Klopotoski, 540 F. App'x 108, 111–12 (3d Cir. 2013). His former contention, that Varner failed to address each isolated incident, is true to the extent that she did not address each isolated incident. However, her refusal to do so was not in error because the page limit was exceeded.

Plaintiff must comply with all procedural requirements. There is nothing in the record to suggest that he was prevented from pursuing the prison grievance process. Plaintiff did not resubmit a grievance on less than two pages to the Secretary's Office of Inmate Grievances and Appeals. He should have taken action to get a decision on the merits. By not doing so, he did not properly exhaust his grievances. Therefore, there is no genuine dispute of material fact with respect to exhaustion and Defendants are entitled to judgment as a matter of law on all claims. Accordingly, all claims against Defendants will be dismissed.

## V. CONCLUSION

Because Plaintiff failed to exhaust his administrative remedies, the Court will grant Defendants' Motion for Summary Judgment. (Doc. No. 51.) All claims in the Amended Complaint (Doc. No. 4) against Defendants will be dismissed. An appropriate Order follows.